http://www.va.gov/vetapp16/Files4/1630476.txt

Citation Nr: 1630476 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 11-27 449 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Buffalo, New York

THE ISSUES

1. Entitlement to Department of Veterans Affairs compensation under 38 U.S.C.A. § 1151 for dysthymia.
 
 2. Entitlement to Department of Veterans Affairs compensation under 38 U.S.C.A. § 1151 for a heart disability.
 
 3. Entitlement to Department of Veterans Affairs compensation under 38 U.S.C.A. § 1151 for diabetes mellitus, type II.
 
 4. Entitlement to Department of Veterans Affairs compensation under 38 U.S.C.A. § 1151 for nodular thyroid disease.

REPRESENTATION

Appellant represented by: P. Michael Shanley, Attorney

ATTORNEY FOR THE BOARD

R. Sauter, Associate Counsel

INTRODUCTION

The Veteran had active service from September 1967 to July 1981.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a February 2011 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Buffalo, New York.

An October 2015 rating decision denied service connection claims for dysthymia, a heart disability, diabetes mellitus, type II, and nodular thyroid disease on a direct basis and as caused by claimed herbicide or radiation exposure. Those claims are not presently before the Board. 

On his October 2011 substantive appeal, the Veteran requested a Board hearing in Washington, D.C. In April 2014 correspondence, the Veteran's attorney indicated that it is impossible for the Veteran to travel to Washington, D.C., for a Board hearing. Alternatively, he requested a videoconference hearing at the federal courthouse in Syracuse, New York. In July 2014, the Board contacted the Veteran and he indicated that he does not want any type of hearing. The Board deems the hearing request withdrawn. 

The claims were remanded in November 2014 for additional development. The Board is satisfied that there was substantial compliance with the remand directives. Stegall v. West, 11 Vet. App. 268 (1998).

FINDINGS OF FACT

1. The weight of the credible and probative evidence of record indicates that dysthymic disorder was not caused by any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA employees or due to an event not reasonably foreseeable.

2. The weight of the credible and probative evidence of record indicates that the Veteran's heart condition was not caused by any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA employees or due to an event not reasonably foreseeable.

3. The weight of the credible and probative evidence of record indicates that the Veteran's thyroid condition was not caused by any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA employees or due to an event not reasonably foreseeable.

4. The weight of the credible and probative evidence of record indicates that the Veteran's diabetes mellitus was not caused by any carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA employees or due to an event not reasonably foreseeable.

CONCLUSIONS OF LAW

1. The criteria for compensation under 38 U.S.C.A. § 1151 for dysthymic disorder have not been met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.361, 17.32 (2015).

2. The criteria for compensation under 38 U.S.C.A. § 1151 for a heart condition have not been met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.361, 17.32 (2015).

3. The criteria for compensation under 38 U.S.C.A. § 1151 for a thyroid condition have not been met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.361, 17.32 (2015).

4. The criteria for compensation under 38 U.S.C.A. § 1151 for a diabetes mellitus have not been met. 38 U.S.C.A. § 1151 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.361, 17.32 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. A notice letter was sent to the Veteran in June 2010, prior to the initial adjudications of the issue on appeal. The letter informed the Veteran of what information and evidence must be submitted to substantiate the claim, including a description of what information and evidence must be provided by the Veteran and what information and evidence would be obtained by VA. He was also advised to inform VA of any additional information or evidence that VA should have, and to submit evidence in support of the claim to the RO. The content of the letter complied with the requirements of 38 U.S.C.A. § 5103(a) and 38 C.F.R. § 3.159(b).

Additionally, the letter also informed him that the evidence must show that, as a result of VA hospitalization, medical or surgical treatment, examination, or training, he must have an additional disability or disabilities, or an aggravation of an existing injury or disease, and that the disability was the direct result of VA fault, such as carelessness, negligence, lack of proper skill, or error in judgment or that it was not a reasonably expected result or complication of the VA care of treatment, or the direct result of participation in a VA Vocational Rehabilitation and Employment or compensated work therapy program.

VA also has a duty to assist the Veteran with the development of facts pertinent to the appeal. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). This duty includes the obtaining of "relevant" records in the custody of a federal department or agency under 38 C.F.R. § 3.159(c)(2), as well as records not in federal custody (e.g., private medical records) under 38 C.F.R. § 3.159(c)(1). 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. In this regard, the Court has held that VA's duty to provide a medical examination and/or medical opinion under 38 U.S.C.A. § 5103A(d) also applies to compensation claims under 38 U.S.C.A. § 1151. Trafter v. Shinseki, 26 Vet. App. 267, 278-80 (2013). That is, in the context of § 1151 claims, the Court held that the "may be associated" language required that the evidence of record indicate a causal connection between the current disability and the VA treatment, before VA was required to provide a medical examination or opinion. Id. The Board emphasizes that the threshold for making this determination is a "low" one. See McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). 

Therefore, the case was remanded in November 2014 to obtain a VA medical examination or opinion in compliance with the duty to assist. See 38 U.S.C.A. § 5103A(d)(2); 38 C.F.R. § 3.159(c)(4); Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). In accordance with the remand directives, VA medical opinions were obtained in January 2015 to assist in determining whether it is at least as likely as not that any of the Veteran's claimed disabilities were aggravated as a result of carelessness, negligence, lack of proper skill, error in judgment, or a similar instance of fault on the part of VA in furnishing the general medical treatment, or from an event not reasonably foreseeable. The Board finds that the January 2015 VA medical examinations are adequate, as they were predicated on a physical examination and a full reading of the claims file, including the Veteran's own allegations. As discussed below, the VA examiners provided a rationale for the opinions stated, relying on and citing to the records reviewed. Additionally, there has been no allegation that the opinions were inadequate. 

The Board notes that the Veteran was not provided an examination to address the claim for diabetes mellitus. In this regard, as will be discussed in further detail below, the Veteran has only argued that the RO has caused stress which led to aggravation of his disability. He has not provided any indication of medical treatment which he feels caused or aggravated the condition. There is nothing in the record that indicates the symptom is related to VA treatment and it does not meet the low threshold of McLendon v. Nicholson, 20 Vet. App. 79, 83 (2006). See also Waters v. Shinseki, 601 F.3d 1274, 1278 (Fed. Cir. 2010)( since all veterans could make bare assertions that a service connected illness caused their current medical problems, requiring examinations in such cases "would eliminate the carefully drafted statutory standards governing the provision of medical examinations and require the Secretary to provide such examinations as a matter of course in virtually every veteran's disability case.").

Thus, there is adequate medical evidence of record to make a determination in this case. Accordingly, the Board finds that VA's duty to assist with respect to obtaining a VA examination or opinion with respect to the issues on appeal has been met. 38 C.F.R. § 3.159(c)(4) (2015). 

Neither the Veteran nor his representative has identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claim that has not been obtained. The Board thus finds that all necessary development has been accomplished. 

Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claim. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

Claim for Compensation Under Section 1151

The Veteran contends in his June 2010 claim that he should be compensated under Section 1151 for his non-service connected disabilities of dysthymic disorder, heart condition, thyroid disease, and diabetes. Regarding dysthymic disorder, he notes that the condition is aggravated by stress and that "there are times I believe that the employees at the Veterans Affairs Regional Office are trying to kill me and my wife." He notes that he cannot take anti-depressants because he is "allergic and my blood pressure." He states that stress and fear have caused his claimed heart condition, and that he has not been able to undergo CT scan or MRI because VA does not have the equipment to perform those tests on a person of the Veteran's weight, and will not pay for him to see an outside provider. Additionally, he states that "I won't allow the VA to perform a heart catheterization on me because I really do believe the RO employees and the VA hospital does kill people." Regarding his thyroid condition, he describes undergoing a biopsy of a thyroid nodule in which no numbing agent was used and "they stabbed me 9 times with a very long needle in the neck, they forced me to lie flat on my back, so I couldn't breathe." The Veteran contends that his diabetes has been aggravated by stress and that "if the [RO] had concluded my wife's claim for benefits in a reasonable time my stress would (possibly) decreased... The [RO] is directly responsible for the stress... The additional stress is responsible for my health deteriorating. The diabetes getting worse is the [RO]'s fault." 

Section 1151 compensation is awarded for qualifying additional disability in the same manner as if such additional disability were service-connected. The purpose of the statute is to award benefits to those Veterans who were disabled as a result of VA treatment or vocational rehabilitation. 38 U.S.C.A. § 1151(a) (West 2014).

Prior to the October 1, 1997 amendments, the provisions of 38 U.S.C.A. § 1151 simply required a causal connection between the VA treatment in question and additional disability, as there was no issue as to fault or negligence on the part of VA. 38 U.S.C.A. § 1151 (West 1991). This "no fault" interpretation of the statute and regulations prior to October 1, 1997, was implemented by the United States Supreme Court in Brown v. Gardner, 513 U.S. 115 (1994), aff'd 5 F.3d 1456 (Fed. Cir. 1993), aff'd Gardner v. Derwinski, 1 Vet App. 584 (1991). 

However, effective October 1, 1997, the United States Congress amended § 1151. The amendment rescinded the "no fault" requirement. See Pub. L. No. 104-204, § 422(a), 110 Stat. 2926 (September 26, 1996), codified at 38 U.S.C.A. § 1151 (West 2014). 

Effective September 2, 2004, the regulation implementing the provisions of 38 U.S.C.A. § 1151 also changed. Such claims previously were adjudicated under 38 C.F.R. § 3.358. However, VA subsequently promulgated a new regulation, 38 C.F.R. § 3.361, to implement the provisions of the revised statute. This regulation is applicable to claims for compensation benefit pursuant to 38 U.S.C.A. § 1151 filed on or after October 1, 1997. See 69 Fed. Reg. 46,426 (Aug. 3, 2004). 

The earliest indication that the Veteran sought compensation pursuant to 38 U.S.C.A. § 1151 was received in June 2010. In the statement, the Veteran contends that his conditions worsened as a result of stress related to his medical care at VA facilities. He essentially maintains that he should be compensated for a claimed additional disability that was caused by his VA treatment. As such, the most recent amended version of § 1151, requiring a showing of VA negligence or fault, is applicable. See 38 C.F.R. § 3.361(a) (provides that the amended regulation applies to claims received by VA on or after October 1, 1997); VAOPGCPREC 40-97 (stating that all § 1151 claims which were filed after October 1, 1997, must be adjudicated under the statutory provisions currently in effect, which essentially require a showing of negligence or fault on the part of VA). 

For purposes of establishing entitlement to section 1151 benefits, a disability or death is a qualifying additional disability or qualifying death if the disability or death:

(1) was not the result of the Veteran's willful misconduct; and

(2) the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the Veteran under any law administered by the Secretary, either by a Department employee or in a Department facility as defined in section 1701(3)(A) of this title, and the proximate cause of the disability or death was-

(A) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of the Department in furnishing the hospital care, medical or surgical treatment, or examination; or

(B) an event not reasonably foreseeable.

38 U.S.C.A. § 1151(a); 38 C.F.R. § 3.361(a)-(d). 

First, there must be evidence of additional disability, as shown by comparing the Veteran's condition before and after the VA medical care in question. 38 C.F.R. § 3.361(b). VA considers each body part or system separately. The additional disability must not be the result of the Veteran's willful misconduct. 38 U.S.C.A. § 1151(a); 38 C.F.R. § 3.301(c)(3).

Second, the additional disability must be caused by hospital care, medical or surgical treatment, examination, training and rehabilitation services, or compensated work therapy program furnished the Veteran by VA. 38 C.F.R. § 3.361(c). Merely showing that a Veteran received care, treatment, or examination and that the Veteran has an additional disability does not establish cause. 38 C.F.R. § 3.361(c)(1). In order for additional disability to be compensable under 38 U.S.C.A. § 1151, the additional disability must have been actually caused by, and not merely coincidental to, hospital care, medical or surgical treatment, or medical examination furnished by a VA employee or in a VA facility. 38 C.F.R. § 3.361(c)(1). Additional disability caused by a Veteran's failure to follow properly-given medical instructions is not caused by hospital care, medical or surgical treatment, or examination. 38 C.F.R. § 3.361(c)(3). 

Third, with regard to causation, the proximate cause of the disability, as opposed to a remote contributing cause, must be 1) carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on the part of VA in furnishing the hospital care, medical or surgical treatment, or examination; or 2) an event that was not reasonably foreseeable. 38 U.S.C.A. § 1151(a)(1); 38 C.F.R. § 3.361(d).

With regard to carelessness or negligence, to establish that carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA's part in furnishing hospital care, medical or surgical treatment, or examination was the proximate cause of a Veteran's additional disability or death, it must be shown that the hospital care or medical or surgical treatment caused the Veteran's additional disability or death; and (i) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (ii) VA furnished the hospital care or medical or surgical treatment without the Veteran's informed consent. Determinations of whether there was informed consent involve consideration of whether the health care providers substantially complied with the requirements of 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d)(1). Minor deviations from those requirements that are immaterial under the circumstances of a case will not defeat a finding of informed consent. Id. Consent may be express (i.e., given orally or in writing) or implied under the circumstances specified in § 17.32(b) of this chapter, as in emergency situations. Id.

With regard to reasonable foreseeability, whether the proximate cause of a Veteran's additional disability or death was an event not reasonably foreseeable is in each claim to be determined based on what a reasonable health care provider would have foreseen. The event need not be completely unforeseeable or unimaginable but must be one that a reasonable health care provider would not have considered to be an ordinary risk of the treatment provided. In determining whether an event was reasonably foreseeable, VA will consider whether the risk of that event was the type of risk that a reasonable health care provider would have disclosed in connection with the informed consent procedures of 38 C.F.R. § 17.32. See 38 C.F.R. § 3.361(d)(2). But if the Board makes an initial determination that any additional disability was not caused by VA, the Board is not required to make a finding as to whether the event in question was reasonably foreseeable. See 38 C.F.R. § 3.361(c); Loving v. Nicholson, 19 Vet. App. 96, 99-100 (2005). 

Thus, section 1151 contains two causation elements-a Veteran's disability must not only be "caused by" the hospital care or medical treatment he received from VA, but also must be "proximate[ly] cause[d]" by the VA's "fault" or an unforeseen "event." See 38 U.S.C.A. § 1151(a)(1).

VA regulations provide that informed consent is the freely given consent that follows a careful explanation by the practitioner to the patient of the proposed diagnostic or therapeutic procedure or course of treatment the expected benefits, reasonably foreseeable associated risks, complications, or side effects, reasonable and available alternatives, and anticipated results if nothing is done. See 38 C.F.R. § 17.32(c). Under 38 C.F.R. § 17.32(d), the informed consent process must be appropriately documented in the medical record. In addition, signature consent is required for all diagnostic and therapeutic treatments or procedures that require the use of sedation, anesthesia or narcotic analgesia; are considered to produce significant discomfort to the patient; have a significant risk of complication or morbidity; or require injections of any substance into a joint space or body cavity. Id. 

In determining whether § 1151 compensation is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the Veteran prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; and Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Analysis

As noted above, in order for a claim pursuant to 38 U.S.C.A. § 1151 to be granted, it must be determined that an additional disability occurred as a result of carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault on VA. Pursuant to 38 C.F.R. § 3.361, this can be shown by establishing that VA treatment proximately caused additional disability, and that (1) VA failed to exercise the degree of care that would be expected of a reasonable health care provider; or (2) VA furnished the hospital care, medical or surgical treatment, or examination without the Veteran's informed consent. 

Resolving reasonable doubt in favor of the Veteran, the Board finds that there is sufficient evidence to indicate that the Veteran's psychiatric, cardiac, diabetes, and thyroid conditions have undergone some worsening over the course of the appeal period. While the Veteran has incurred additional disability and meets the first element of establishing compensation under § 1151, the Board finds that the claim does not meet the additional criteria required to establish the remaining elements.

For service connection to be warranted, actual causation must be shown. Merely showing that a veteran received care, treatment, or examination and that the veteran has an additional disability does not establish cause. 38 C.F.R. § 3.361(c)(1). In this case, there is no competent medical evidence indicating that any of the claimed disorders were in any way caused by hospital care, medical or surgical treatment, or examination furnished by VA. See 38 U.S.C.A. § 1151; 38 C.F.R. § 3.361.

The Veteran was provided a January 2015 VA examination to assess his psychiatric condition. The diagnosis was depressive disorder, which the examiner opined was "the direct result of the reported a marked physical discomfort and limited physical ability secondary to his multiple medical conditions." The examiner noted that the Veteran's depression diagnosis and treatment have been consistent since approximately 1998. The examiner observed that the Veteran frequently refuses treatment recommended by VA medical professionals, including taking prescription medication. The Veteran told the January 2015 examiner that does not believe in "soft sciences" like mental health treatment. Overall, the examiner assessed the Veteran's mental health disability picture as follows: "As noted the veteran's depression is mild to moderate. It does result in persistent and mild to moderate impairments in his psychosocial functioning. It does result in difficulty and enjoying daily activities. A persistent and moderate sleep disturbance is noted which results in fatigue and can further exacerbate his depression. He can become discouraged easily. His mood tends to be persistently low. The veteran has not worked since 1992. If he were candidate for an appointment his depression might cause some mild episodic work-related difficulties for him. However there is no evidence of any severe occupational impairment related to his depression. Historically, when the veteran was working, mental health issues did not significantly impair his work quality or work relationships." The examiner attributed the Veteran's depression to his multiple medical conditions. Next, the examiner opined that that there is no evidence that the VA medical center failed to properly treat and diagnose the Veteran's depression; rather, the examiner noted that treatment for depression has been offered "on a frequent basis" by the Veteran's VA primary care physician, and the Veteran has consistently refused such treatment. 

The Veteran was provided a January 2015 VA examination to assess his cardiac and thyroid conditions. The Veteran reported to the examiner that he has been getting adequate care at VA by his primary care physician, cardiologist, and endocrinologist. He stated that his contention is that the claimed disabilities were caused by Agent Orange and radiation, not by VA treatment. As noted in the Introduction, the service connection claims, to include as due to Agent Orange and radiation, are not presently on appeal before the Board. The VA examiner reviewed the medical evidence relating to the Veteran's cardiac and thyroid problems, and performed full examinations for each disorder. 

As to the cardiac disorder, the examiner noted that the Veteran has been receiving care at the VA medical center (VAMC) since 1997. The VAMC "provided regular, consistent expert care" to the Veteran, who has consistently refused the recommended course of treatment, including cardiac catheterization. The examiner further noted that no clinical cardiac diagnosis has ever been made due to the Veteran's refusal of treatment and diagnostic testing; rather, coronary artery disease is presumed based on his clinical history and process of elimination. The examiner provided the following opinion: "Even though veteran has not had cardiac catheterization to prove ischemic heart disease, even then he has been given benefit of doubt on his clinical history and has been diagnosed with CAD by presumption, he is empirically being treated appropriately and aggressively for presumed CAD at VA, and is being monitored regularly. VA is the sole provider of his care as per veteran. In my opinion, reviewing the record from C-File and CPRS, there has been no carelessness, negligence, lack of proper skill, error of judgment or similar instance of fault by VA, or the result of an event not reasonably foreseeable."

Regarding the thyroid condition, the examiner noted that the Veteran was previously found to have thyroid nodules, but is currently asymptomatic. The examiner explained that, "the clinical importance of the thyroid nodule evaluation is primarily related to the need to exclude thyroid cancer, which is present in 4.0 to 6.5 percent of thyroid nodules." Thus, the examiner explained that fine needle aspiration (FNA) biopsy to rule out cancer would be a standard procedure in patients with nodules. The examiner noted that the Veteran underwent FNA in February 2006 which was unsuccessful. She stated, "FNA is a simple and safe office procedure in which tissue samples are obtained for cytologic examination with or without local anesthesia. With experience, adequate samples can be obtained in 90 to 97 percent of aspirations of solid nodules. Therefore even in expert hands, there is a failure of getting adequate tissue in 3-10% of patients; this veteran falls in this group, probably due to his heavy body habitus." The examiner further observed that the VAMC recommended a repeat FNA in 2010 when ultrasound revealed a mild increase in the size of his thyroid nodules. The Veteran refused to undergo the testing. The examiner provided the following opinion: "Veteran has been getting appropriate and adequate care for his thyroid nodules. He has remained asymptomatic right since the diagnosis till today. He is seen every six month for TSH levels and every one year for thyroid ultrasound. He is f/u regularly in primary care clinic as well as in endocrine clinic. In my opinion there is no carelessness, negligence, lack of proper skill, error in judgment, or similar instance of fault by VA, or the result of an event not reasonably foreseeable."

With regard to the issue of carelessness or negligence in the course of treatment for the claimed conditions, VA treatment records and VA clinician opinions of record do not establish that VA failed to exercise the degree of care that would be expected of a reasonable health care provider. See 38 C.F.R. § 3.361(d)(1)(i). The January 2015 VA examiners, after reviewing and discussing the evidence of record, opined that there was no evidence of any VA carelessness, negligence, judgment error, or fault on behalf of the VA medical care provided to the Veteran for his psychiatric, cardiac, and thyroid conditions. The Board finds that the January 2015 VA examiners' opinions are adequate and are the most probative evidence of record on this matter. The examiners reviewed and detailed the relevant evidence in the claims file. Further, the thyroid and cardiac conditions examiner explained the standard procedures that were offered to or performed on the Veteran, as well as the challenges and success rates of those procedures. The medical evidence indicates that the treatment offered by the VAMC, as well as the results of such treatment, was standard. 

The Board acknowledges that laypersons are sometimes competent to provide opinions regarding such medical matters as diagnosis and etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). The Board also acknowledges the Veteran's statements that he was not satisfied with some of the care he received, and that he believed stress related to medical care was causing his conditions to worsen. The Veteran did not provide any private medical opinions or treatment notes that support this opinion. 

The Board finds that the medical opinions of January 2015 outweigh the general assertions of the Veteran. In this regard, the Board notes that the VA examiners have training, knowledge, and expertise. They reviewed the evidence of record, including the Veteran's own lay statements, and relied on their expertise in rendering their opinions supported by rationale. Therefore, the Board finds that the January 2015 opinions are more probative than the Veteran's lay statements.

Regarding the claim for compensation pursuant to 38 U.S.C.A. § 1151 for diabetes, the Veteran has made no claim that VA medical treatment caused the condition to worsen. Rather, he asserts that diabetes worsened due to stress related to VA denying his wife's claim for benefits and fear of retaliation from the RO. His March 2011 Notice of Disagreement argues that 38 U.S.C.A. § 1151 does "not exclude Department of Veterans Affairs Employees that are assigned to the Department of Veterans Affairs Regional Office." Reviewing the language of the statute reflects otherwise. Specifically, 38 U.S.C.A. § 1151 is entitled "Benefits for persons disabled by treatment or vocational rehabilitation." The statute further notes that compensation is awarded for qualifying additional disability in the same manner as if such additional disability were service-connected and specifies that a disability or death will be a qualifying additional disability when it was not the result of the Veteran's willful misconduct and the disability or death was caused by hospital care, medical or surgical treatment, or examination furnished the Veteran under any law administered by the Secretary. Emphasis added. While the statute references Department employees and department facilities it further qualifies this statement by stating it applies to a Department employee or facility as defined in section 1701(3)(A) of this title. 38 U.S.C.A. § 1701(3)(A) falls under the chapter for "Hospital, nursing home, domiciliary, and medical care." As noted, in order for additional disability to be compensable under 38 U.S.C.A. § 1151, the additional disability must have been actually caused by, and not merely coincidental to, hospital care, medical or surgical treatment, or medical examination furnished by a VA employee or in a VA facility. 38 C.F.R. § 3.361(c)(1). Here, the Veteran does not even allege that any worsening of his diabetes is due to VA treatment. 

The Board is sympathetic to the Veteran's health problems. However, in light of the above, the Board finds that the criteria for entitlement to compensation pursuant to 38 U.S.C.A. § 1151 for any claimed additional disability to the psychiatric, heart, diabetes, or thyroid disorders in the course of regular treatment has not been met, and the claims must be denied. Because the preponderance of the evidence is against the § 1151 claims, the benefit of the doubt doctrine is not for application. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

ORDER

Entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for dysthymic disorder is denied.

Entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for a heart condition is denied.

Entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for a thyroid condition is denied.

Entitlement to compensation under the provisions of 38 U.S.C.A. § 1151 for diabetes mellitus, type II is denied.

____________________________________________
H. SEESEL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs